## DECLARATION OF MARIELLA MARTINEZ, ESQ.

1. My name is Mariella Martinez. I am a Staff Attorney at the non-profit law firm The Legal Aid Society, in New York City.

2. I am the attorney for N.T.C., A#xxx-xx1-783, a twelve year old boy from Honduras. N.T.C. entered the country with his mother, Miss J.M.C.A. (alien number unknown). Per information and belief, on or about June 2018, N.T.C. and his mother were separated from each other near the U.S.-Mexico border.

3. N.T.C. is currently in the custody of the Office of Refugee Resettlement (ORR). He resides at an ORR-contracted childcare facility, Abbott House.

4. On July 6, 2018, I interviewed N.T.C. at this ORR facility. During our meeting, N.T.C. shared that he has been unable to speak with his mother, and in fact, her whereabouts were unknown. I spoke with N.T.C. on July 13, 2018 by phone and he confirmed he still does not know where his mother may be and he has not spoken to her since their separation at the border, almost a month ago.

5. During both the July 6, 2018 meeting and the phone call on July 13, 2018, N.T.C. expressed fear of returning to Honduras and stated that he very much wants to remain in the United States. N.T.C. would like to reunify with his mother who, per information and belief, is in an immigration detention facility in the United States. N.T.C.'s wish is to reunify with Miss J.M.C.A. once she is released from the detention facility, and then both pursue legal relief. However, if N.T.C. must decide between reuniting with his mother and returning to Honduras, reuniting with his mother and remaining in detention or being separated from his mother but remaining in the United States, N.T.C. would choose to remain in the United States without his mother. In the event N.T.C.'s mother either

1

remains in detention or is deported, N.T.C. has been in clear in his position: to remain in the United States and pursue his own legal claims while being released to his cousin, G.R.D. who, upon information and belief, resides in Texas.

6. As noted in paragraph four, N.T.C. has not spoken with his mother since they entered the United States and were separated almost a month ago. Likewise, upon information and belief, the ORR-contracted childcare facility has also been unable to communicate with Miss J.M.C.A. Additionally, I too have not been able to communicate with N.T.C.'s mother.

7. In my opinion, reunification of N.T.C. with Miss J.M.C.A., outside of a detention facility, is of the utmost importance for his mental health and well-being. Reunification in this manner would allow N.T.C. and his mother to make decisions regarding N.T.C.'s best interests and legal case.

8. The combination of the continued separation, the lack of communication with his mother, and the lack of any permanency plan for N.T.C. is, per my personal observations, information and belief, having an effect on N.T.C.'s mental health and well-being. N.T.C. appeared to become sad and frightened during our July 6, 2018 meeting when sharing with me the conditions in Honduras that caused his mother and him to leave, followed by the unexpected separation from his parent. N.T.C.'s fear of returning to Honduras weighs heavily in his decision to remain in the United States, so much so that N.T.C. is prepared to remain separated from his mother.

9. N.T.C. has immigration claims separate and apart from his mother's legal claims and as such should be afforded an opportunity to be heard. N.T.C. is prima facie eligible for immigration relief in the form of Special Immigrant Juvenile Status, a form of

humanitarian relief available to children who have been abused, abandoned or neglected by one or both parents. N.T.C. also has a colorable asylum claim based on persecution in his home country.

10. Reunification will also permit N.T.C. and his mother to make decisions together about N.T.C.'s best interest. N.T.C.'s current inability to consult with his mother regarding his case and wishes deprives him of the opportunity to collect evidence and prepare applications for immigration relief for which he may well be eligible.

11. If N.T.C. is moved from the state of New York, he will no longer have access to existing counsel, which would delay, if not disrupt, his efforts to apply for the immigration relief for which he may be eligible.

12. If you have additional questions about this case, please contact me at 718.579.7943 or by email at MVMartinez@legal-aid.org.

declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: July 15, 2018

Mariella Martinez, Esq.
Staff Attorney
The Legal Aid Society

3