# DECLARATION OF BETH KRAUSE IN SUPPORT OF COMPLAINT, PRELIMINARY INJUNCTION, AND CLASS CERTIFICATION

I, Beth A. T. Krause, Esq., pursuant to 28 U.S.C. § 1746, declare as follows:

1. I submit this declaration in support of the plaintiffs' complaint, motion for a preliminary injunction, and class certification. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to the following:

## About the Declarant

2. I am the Supervising Attorney of the Immigrant Youth Project ("Youth Project"), a project within the Immigration Law Unit of the Legal Aid Society, specifically serving immigrant youth under 21 years old.

3. I have been Supervising Attorney of the Youth Project since October 2016. From 2012 to 2016, I had a private practice representing children and adults in New York Family and Supreme Courts. From 2009 to 2012, I was a staff attorney at the Children's Law Center in the Bronx, New York, where I exclusively represented children in Family and Supreme Courts.

## About the Legal Aid Society

4. The Legal Aid Society ("the Society") is the nation's oldest and largest not-for-profit organization providing free, high-quality legal services to New York City's low-income community. Founded in 1876, the Society has a proven track record of providing targeted services to meet the essential legal needs of vulnerable New Yorkers in all five boroughs of the City. With an annual caseload of more than 300,000 legal matters, the Society operates three major practices — Civil, Criminal, and Juvenile Rights—and receives volunteer help from law firms, corporate law departments and expert consultants coordinated by its *Pro Bono* program. In addition to the annual caseload, the Society's law reform representation benefits millions of low-

income families and individuals in New York City, and the landmark rulings in many of these cases have a statewide and national impact.

5. Since the 1980s, the Society has maintained a reputable citywide Immigration Law Unit (ILU) within the Civil Practice. This Unit, now comprised of approximately 60 staff, is a recognized leader in the delivery of free, comprehensive, and high caliber immigration legal services to low-income immigrants in New York City and surrounding counties. Staff represent immigrants before United States Citizenship and Immigration Services (USCIS), before immigration judges in removal proceedings, on appeals to the Board of Immigration Appeals (BIA), and in federal court on *habeas corpus* petitions and petitions for review. In addition to representing clients, staff conduct outreach clinics and trainings at over 13 community-based organizations throughout New York City and at immigration detention centers.

**About the Legal Aid Society's Immigrant Youth Project within the Immigration Law Unit**

6. Since 2003, the Society's Immigrant Youth Project ("Youth Project") has assisted undocumented immigrant youth in New York City and surrounding counties who are in foster care, adoption, or under guardianship, to obtain SIJS and other immigration benefits, such as asylum, and to defend unaccompanied children (UAC) in removal proceedings. In addition to providing direct legal services, ILU staff provide regular trainings to immigrant-serving advocates from community-based organizations, State and local agencies, and judicial and legislative staff.

7. The Society's Youth Project is also a member of the Immigrant Children Advocates' Relief Effort ("ICARE"), a collaborative of 6 high volume immigrant youth legal service providers in New York City who, with support from private funders and the New York City

Council, aim to provide universal representation to children placed in immigration removal proceedings venued at the New York City Immigration Court.

8. The Youth Project serves the legal needs of two vulnerable populations: (1) "undocumented immigrant youth," who are in foster care or in need of guardianship, custody, delinquency, or adoption arrangements, but who for the most part have not yet been detected by immigration authorities; and (2) "unaccompanied children" who have recently arrived in the United States without a parent to escape endemic gang violence and/or extreme poverty in their home countries, and have been placed in immigration removal proceedings after arrest and detention at the border.

9. For many years, the Youth Project has organized the many nonprofit groups and pro bono attorneys working in immigrant youth advocacy throughout the greater New York City region as well as New York State. The Youth Project manages a state-wide listserv for nonprofit legal service providers, law school clinics, pro bono attorneys, and service providers working with immigrant youth and UAC. The Youth Project also hosts bi-monthly meetings for these advocates regarding issues and developments relevant to this client population.

### The Role of Attorneys for Children in Immigration Proceedings

10. Attorneys for children serve a unique role in any judicial system. While traditional legal representation of children in the domestic juvenile system took a more paternalistic view of children, some attorneys now advocate for "true legal advocacy in the form of the traditional lawyer-client model."[1] Until 2004, attorneys for children in immigration proceedings often looked to the domestic juvenile court system for guidance as to how children should be represented. However, in 2004, the American Bar Association (ABA) Bar Association

---

[1] Suparna Malempati, *Ethics, Advocacy, and the Child Client*, 12 CARDOZO PUB. L. POL'Y & ETHICS J. 633, 634 (2014).

promulgated holistic and child-centered standards for attorneys representing unaccompanied children.[2] These standards take a more modern approach to the representation of children and do not presume "that children below a certain age lack competence to determine their wishes in litigation."[3] According to the standards, each child should be "permitted, to the extent possible given his intellectual, social, and emotional development, to participate in all decision-making processes that affect his life."[4] As a result, a child's attorney fulfills a special role in the immigration system. The ABA standards make clear that a child's attorney's duty is to guarantee that the child participates in the immigration process, provides the child with legal advice and "zealously advocate the child's legal interests, as directed by the child's expressed wishes."[5] In representing a child, the child's attorney is obligated to "represent the child's expressed wishes, even if they conflict with those of the parent or other adult."[6] Where a child does not express the objectives of representation or is found incompetent, "the child's attorney shall advocate his legal interests, preserving to the greatest extent possible any immigration remedies available to the child."[7] It is under this model of presumed direct and zealous representation of expressed wishes that the Society's attorneys represent their child-clients.

**The Youth Project's Work With Children Separated from Their Parents at the Border**

11. Beginning in June 2018, we became aware of the presence in federal Office of Refugee Resettlement contracted New York child care agencies ("ORR shelters") of children who had

---

[2] *See* AM. BAR ASS'N, STANDARDS FOR THE CUSTODY, PLACEMENT AND CARE; LEGAL REPRESENTATION; AND ADJUDICATION OF UNACCOMPANIED ALIEN CHILDREN IN UNITED STATES (2004), *available at* https://www.americanbar.org/content/dam/aba/publications/commission_on_immigration/immigrant_childrens_standards_authcheckdam.pdf ("ABA CHILD IMMIGRATION STANDARDS")
[3] *Id.* at 14.
[4] *Id.* at 3.
[5] *Id.* at 12. Also *see* Kristen Jackson, Meredith Linsky and Elissa Steglich, Representing Children in Removal Proceedings: Ethical and Practical Issues, AILA (2014), *available at* https://www.americanbar.org/content/dam/aba/administrative/immigration/IACEthicsAILAOct2014authcheckdam.pdf.
[6] ABA CHILD IMMIGRATION STANDARDS, *supra* note 2, at 13.
[7] *Id.*

been involuntarily separated from their parents after crossing the southern U.S. border and being detained by Customs and Border Protection (CBP) officials. We were recruited by Catholic Charities, the federally authorized legal services provider to children in ORR shelters in New York, to assist with the representation of these children as they had become overwhelmed by the sudden increased number of children. Furthermore, Catholic Charities sought our assistance to ensure that each child separated from their parent had an opportunity for their own independent legal counsel.

12. Beginning in late June, 2018, Youth Project attorneys and attorneys from the Legal Aid Society's Juvenile Rights Practice, under my supervision, began meeting with our clients to determine their interests and positions regarding reunification with their parent, sponsorship by a relative, and the viability of various forms of immigration relief. To date, we have met with 37 children ranging from two to seventeen years old. Eleven of these children are housed at Abbott House, and *nine of these eleven are slated for transfer for the purpose of reunification by July 17, 2018, including two who we have been informed are being transported to detention in Port Isabel, Texas.* Port Isabel Detention Center is not a licensed child-care facility. Transferring children to a non-Flores Settlement compliant facility is a violation of their rights under the Flores Settlement.[8]

13. Six of the 37 children we were notified about beginning in late June, 2018, have been, or very soon will be, reunified with their parents. The parents of three children are currently being held in federal criminal custody. Eight children have expressed a desire to return to their home countries with their parents who has a final order of deportation. The positions of two children have not been determined to date due to language or other communication difficulties. Eighteen children, or roughly half of our clients, have expressed that they wish to remain in the United

---
[8] *Reno v. Flores*, 507 U.S. 292 (1993)

States and pursue their own independent immigration relief even if their parent is repatriated to their home country.

14. On July 12, 2018, Catholic Charities referred to us another 39 clients who have been separated from their parents under the same circumstances. Although the Youth Project has not yet been able to interview these 39 new clients, we believe that a similar percentage of these children will express a desire to pursue their own immigration cases independent of their parent and even if their parent is returned to their home country.

15. On July 16, 2018, we were notified four of these 39 children who had been referred to the Youth Project for counsel have been moved out of New York State to Port Isabel, Texas for the purpose of reunifying them with their parents. Upon information and belief, these children had been placed at Cayuga Homes. This transfer happened without advance notice to the Youth Project or any opportunity for the Youth Project counsel to consult with our clients in advance of transfer. In addition, the Youth Project has not been provided with any information that would enable us to verify whether or under what circumstances reunification has, in fact, taken place.

16. Representation of this population has presented new and unique challenges to attorneys. First, as these children are in foster care homes or shelters, attorney access to their clients is limited and must be planned in advance. Often times, attorney email and phone requests to meet with their clients are not timely returned by client's case managers. And even when a legal meeting is scheduled, attorneys may arrive to find that their client is unavailable due to program activities that weren't considered when scheduling the appointment.

17. Another unique challenge in representing children who were forcibly separated from their parents is the difficulty the attorney experiences in accessing their clients' parents who, for our clients in New York, are located across the country in ICE detention or federal criminal

custody. We represent a number of children whose parents were not located and who had no contact with for weeks after separation. We represent a number of children who have not themselves had telephone contact with their parents and even more children whose attorneys have not been able to access the parents. Access to parents of children seeking immigration relief in the US is particularly important because many facts that support a child's claims may be unknown or misunderstood by the child himself. In such instances, consultation with a child's parent is necessary in order to adequately represent the child-client. Furthermore, in the current situation, it is necessary for attorneys for children to access parents in order to understand the possible outcomes of the parent's immigration case and how that will impact the child's relief and interests, including whether a child would want to accompany a parent returning to their home country. Furthermore, without access to their child's attorney, a parent cannot understand whether their child has an independent claim to immigration relief. If parents had such information, in many cases, they may agree that their child should not be detained with them or deported.

18. In addition, many of these children are non-English speakers who speak a language other than Spanish, making appropriate translation services difficult to secure.

19. In addition to the difficulties present in accessing both our own clients and their parents, the government has kept attorneys for children uninformed about details regarding reunification with parents and sponsorship out of ORR custody, whether to a parent or other relative.

20. Illustrative of the lack of information regarding our clients is the recent reunification of children under five years old. Despite a court ordered deadline of July 10 to reunify our youngest clients, and despite numerous emails to contacts within ORR and ICE, we were uninformed of developments despite making repeated demands for a date, time, and location for the anticipated

reunification. The only information provided was that the mother was in transit to New York City on July 11 and then that the mother and child were reunited. We were never informed that the mother would be fitted with an ankle monitor, placed on an order of supervision, or where the mother and child would stay once reunified. While these details may not have been crucial for attorneys to represent children under five years old slated for reunification with their parent, the situation for older children is much different. Older children often hold much more nuanced interests and positions and have a greater likelihood of independent claims to immigration relief. In such circumstances, information is crucial for a child to make informed decisions that may impact their liberty interests, ability to seek immigration relief, and for these children who fled endemic violence and poverty, their safety and wellbeing.

21. Upon information and belief, the government is currently embarking on a plan to effectuate mass reunifications of parents with their separated children in family detention facilities near the southern border with the purpose of either long-term detention as a family unit or deportation. However, despite having entered notices of appearance for many children certainly subject to this reunification, we have received no official notice of these plans and thus cannot adequately advise our clients as we are ethically bound to do. Perhaps the only thing certain about a child's transfer to family detention is that the child will no longer have access to their counsel as the physical distance will make continuing such representation impossible for attorneys representing separated children presently in New York.

of America that the foregoing is true and correct.

Executed on: 7/15/18

_/s/ Beth A. T. Krause_
Beth A. T. Krause, Esq.