# DECLARATION OF ADRIANA C. ZAMBRANO

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. I, Adriana C. Zambrano, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

2. I am a law graduate working under the supervision of attorneys at Aldea - The People's Justice Center, a non-profit legal organization in Reading, PA.

3. I have been in contact with Mr. MZ, a Honduran father whose three year old boy, J, was taken from him by Border Protection officers near El Paso, TX in late May of this year. Aldea, in conjunction with local counsel in Arizona, provide free legal representation to Mr. MZ and his child.

4. Mr. MZ's criminal charges for entering the United States without authorization were dismissed on or about June 22, 2018. He was then transferred out of El Paso Jail Annex to the West Texas Detention Facility in Sierra Blanca, TX. Mr. MZ stated that on June 28th, an ICE? officer at Sierra Blanca rounded up about 25 to 30 fathers with separated children and told them that they had no rights, but they had two options: to ask for asylum or to get deported. If they asked for asylum, they could file a request to be released on their recognizance or they could file a request to be released under supervision. The ICE?officer said that fighting for asylum meant he could be in jail for another five months. Then he added that if they requested deportation instead, that could take 40 days, and then the fathers would be reunited with their children on the plane back to their country.

5. The following day, June 29th, 2018, Mr. MZ stated another ICE? officer came to the fathers again. They had a form for them to sign, it was titled "Child Reunification Request." Mr. MZ signed it and turned it in, but had access to another copy, which he read to me verbatim:

6. Mr. MZ stated the form had lines on the top for him and his child's name, their identification numbers, and their country of citizenship. Then it had a line that said "I am hereby requesting reunification with my child for repatriation to my country of citizenship." At the very bottom it had a line that said "consular notification date." He was told to sign and they would fill out the rest.

7. Mr. MZ stated that the officers insisted this wasn't signing his deportation. They said that this was so that *when* he gets deported, his child can be returned to him and they can go together.

8. The following day, June 30th, 2018, Mr. MZ was moved to El Paso Processing Center. The following day, July 1st, he was moved to Florence, AZ. The next day, July 2nd, he was moved to Eloy, AZ. The consecutive transfers have made communication, and therefore representation, extremely difficult. Mr. MZ described that the facilities are very crowded and it is very difficult to get on the phone. We never had a single private legal call to discuss the details of his case. Mr. MZ was also perturbed about being placed in a heightened security population.

9. On July 3rd, Mr. MZ reported finally being able to speak with his child through an arranged 10-minute video call. Mr. MZ has stated that his biggest fear, second only to having his child adopted out to another family, is that his boy will forget about him, his father. This fear seemed to realize during this video call, as his child didn't seem to recognize him. Mr. MZ described that he was overwhelmed with sadness, with his baby not recognizing him. He reported that even the prison officer who took him to make that video call started to cry as well.

10. The same day, an immigration officer sent for him. Her name was Miriam and she said she was from ORR. However, Mr. MZ noticed that she was wearing an ID badge that said "ICE." She asked him to sign some documents, similar to the form he had signed before, but Mr. MZ said he wasn't signing anything without his attorney's advice. Miriam stated again that this wasn't a deportation, and that Mr. MZ would "go through a process" first. He was given no information about what that process meant.

11. According to Mr. MZ, Miriam said they had been having problems before with parents getting deported without their children, and that this form would make sure that didn't happen to his family. Mr. MZ insisted that he didn't feel capable to make any decisions about his immigration case until he had his child in his arms.

12. Mr. MZ reported feeling pressured and understanding that his *only* option was to sign documents he didn't fully understand, provided by people he could not trust, but who had the power to return his child to him.

13. I declare under penalty of perjury, that the foregoing is true and correct. Executed on this 15th day of July, 2018.

FURTHER AFFIANT SAYETH NOT.

Adriana C. Zambrano
Legal Volunteer
Aldea - the People's Justice Center
Cel. 786 587 5160
adriana@aldeapjc.org